Citation Nr: 1761204 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 10-04 213 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES

1. Entitlement to an initial evaluation in excess of 70 percent for posttraumatic stress disorder (PTSD).

2. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for a left foot disability. 

3. Entitlement to service connection for a left foot disability.

4. Entitlement to service connection for a left knee disability. 

5. Entitlement to service connection for a right shoulder disability. 

6. Entitlement to service connection for a left eye disability (claimed as conjunctival melanosis, including residuals of cancer).

7. Entitlement to a total disability rating due to individual unemployability (TDIU). 


REPRESENTATION

Appellant represented by: C. Bennett Gore, Attorney


ATTORNEY FOR THE BOARD

S. Anwar, Associate Counsel


INTRODUCTION

The Veteran had active service from February 1970 to September 1971.

This matter comes before the Board of Veterans' Appeals (Board) from May 2009 and July 2012 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina.

The case was remanded in March 2014 for evidentiary development. All actions ordered by the remand have been accomplished. 

The issue of improper payment of attorney's fees has been raised by the record in an October 2017 statement, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over the issue, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9 (b) (2016). 

Pursuant to VA's duties to notify and assist the Veteran, VA advised the claimant how to substantiate an application for benefits, obtained all relevant and available evidence, and conducted any appropriate medical inquiry. The appeal is ready for appellate review. This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing system. 



FINDINGS OF FACT

1. The Veteran's posttraumatic stress disorder manifested with occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); difficulty in adapting to stressful circumstances (including work or a work like setting); and an inability to establish and maintain effective relationships.

2. In an August 2001 rating decision, the Columbia, South Carolina, RO denied reopening a previously denied claim of entitlement to service connection for a left foot disability. The Veteran initiated an appeal, but withdrew the appeal prior to final adjudication. 

3. Evidence associated with the file since August 2001, when considered by itself or in connection with evidence previously assembled, relates to an unestablished fact necessary to substantiate the claim of entitlement to service connection for a left foot disability.

3. The Veteran's current left foot disability is not etiologically related to service. 

4. The Veteran's current left knee disability was not incurred in service.

5. The Veteran's current right shoulder disability was not incurred in service.

6. The Veteran's current left eye disability was not incurred in service.

7. The Veteran's physical and mental impairments caused by his service-connected disabilities render him unable to maintain gainful employment.



CONCLUSIONS OF LAW

1. The criteria for an initial evaluation in excess of 70 percent for posttraumatic stress disorder have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.126, 4.130, Diagnostic Code (DC) 9411 (2017).

2. The August 2001 rating decision denying a petition to reopen the claim of entitlement to service connection for a left foot disability is final. 38 U.S.C. § 7105 (c) (West 2014); 38 C.F.R. §§ 3.104 (a), 20.302 (a), 20.1103 (2017).

3. As pertinent evidence received since the August 2001 denial is new and material, the criteria for reopening the claim for service connection for a left foot disability are met. 38 U.S.C. §§ 5108, 7105 (West 2014); 38 C.F.R. § 3.156 (2017).

4. The criteria for service connection for a left foot disability have not been met. 38 U.S.C. §§ 1110, 5107 (b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).

5. The criteria for service connection for a left knee disability have not been met. 38 U.S.C. §§ 1110, 5107 (b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).

6. The criteria for service connection for a right shoulder disability have not been met. 38 U.S.C. §§ 1110, 5107 (b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.309 (2017).

7. The criteria for service connection for left eye disability have not been met. 38 U.S.C. §§ 1110, 5107 (b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).

8. The criteria for entitlement to a TDIU have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.3, 4.16, 4.18, 4.19, 4.25 (2017).




REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Notify and Assist

VA has satisfied its duties under the Veteran's Claims Assistance Act of 2000 (VCAA) to notify and assist. 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326, 3.327 (2016).

The VCAA provisions include an enhanced duty to notify a claimant as to the information and evidence necessary to substantiate a claim for VA benefits, and they redefine the obligations of VA with respect to the duty to assist the Veteran with a claim. In several letters of record, the Veteran was informed of the type of evidence needed to develop his claims and what the VA would do to assist the Veteran obtain the necessary evidence. See Dingess v. Nicholson, 19 Vet. App. 473 (2006); see also Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009).

All necessary assistance to obtain evidence has been provided. The Veteran's service treatment and personnel records, pertinent post-service medical records, VA examination reports, Social Security Administration (SSA) records, personal statements, and hearing transcripts have been added to the case file. There is no indication of any additional relevant evidence that has not been obtained.

Regarding the duty to provide adequate VA medical examinations, the Veteran was provided thorough VA examinations in February 2012, November 2012, May 2013, and June 2016. These examinations fully addressed the Veteran's allegations and symptoms, and are probative. The VA examiners reviewed the Veteran's medical history and current symptoms, made clinical observations, and rendered opinions regarding the severity of the disability. In addition, the VA examiners addressed all the relevant rating criteria for rating posttraumatic stress disorder, including the functional impact of the Veteran's disability upon his occupational and social functioning. There is no duty to provide another examination or a medical opinion. See 38 C.F.R. §§ 3.326, 3.327 (2016).

As to the left eye and left knee claims, there is no probative evidence suggesting the claimed conditions are related to service. Rather, only the Veteran's general conclusory statements that his claimed disabilities are related to service are of record, which are insufficient to entitle a veteran to a medical examination under 
§ 5103A (d) (2) (B). Waters v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010) (observing that "[s]ince all veterans could make such a statement, this theory would eliminate the carefully drafted statutory standards governing the provision of medical examinations and require the Secretary to provide such examinations as a matter of course in virtually every veteran's disability case"). See also McLendon v. Nicholson, 20 Vet. App. 79 (2006).

VA has satisfied its duty to notify and assist and the Board may proceed with appellate review.

Increased Ratings

Disability ratings are determined by applying criteria set forth in VA's Schedule for Rating Disabilities. Ratings are based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations should be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7.

For claims for increased ratings which arise out of an initial grant of service connection, the Board must consider the application of "staged" ratings for different periods from the filing of the claim forward, if the evidence suggests that such a rating would be appropriate. See Fenderson v. West, 12 Vet. App. 119 (1999).

In deciding claims, it is the Board's responsibility to evaluate the entire record on appeal. See 38 U.S.C.A. § 7104(a). Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss each and every piece of evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

When all the evidence is assembled, the Board is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

The General Rating Formula for Mental Disorders is as follows:

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.

A 70 percent rating is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); inability to establish and maintain effective relationships.

A 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 

A 30 percent rating is assigned for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

38 C.F.R. § 4.130 (2016).

The symptoms associated with each rating in 38 C.F.R. § 4.130 are not intended to constitute an exhaustive list; rather, they serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). Thus, the evidence considered in determining the level of impairment under 38 C.F.R. § 4.130 is not restricted to the symptoms provided in the DCs. See id. VA must consider all symptoms of a claimant's disorder that affect his or her occupational and social impairment. See id. at 443. If the evidence demonstrates that a claimant has symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the DC, the appropriate, equivalent rating will be assigned. Id. In this regard, VA shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the claimant's capacity for adjustment during periods of remission. 38 C.F.R. § 4.126. Although VA considers the level of social impairment, it does not assign an evaluation based solely on social impairment. Id. VA must consider all of the claimant's symptoms and resulting functional impairment as shown by the evidence in assigning the appropriate rating, and will not rely solely on the examiner's assessment of the level of disability at the moment of examination. See id.

The Veteran's records include evaluations based on the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV), which includes Global Assessment Functioning (GAF) scores. GAF scores are based on a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV; see Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996). 

According to DSM-IV, a score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning, (e.g., few friends, conflicts with peers or co-workers)." A score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. A score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work)." Id. The Court has found that certain scores may demonstrate a specific level of impairment. See Richard, 9 Vet. App. at 267; see also Bowling v. Principi, 15 Vet. App. 1, 14-15 (2001) (observing that a GAF score of 50 indicates serious impairment).

Although a medical professional's classification of the level of psychiatric impairment reflected in the assigned GAF score is probative evidence of the degree of disability, such a score is not determinative of the rating assigned by VA in evaluating a psychiatric disorder under the rating criteria. See VAOPGCPREC 10-95 (March 31, 1995).

At the February 2012 VA medical examination, the Veteran endorsed depressed mood, anxiety, chronic sleep impairment, and mild memory loss, such as forgetting names, directions or recent events. He also endorsed flattened affect, disturbances of motivation and mood, difficulty in adapting to stressful circumstances, including work or a work-like setting, suicidal ideation, isolation and feeling withdrawn from others. The examiner noted the Veteran's level of impairment was occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. The examiner assessed the Veteran with a GAF score of 58. 

At the November 2012 VA medical examination, the Veteran reported he attended group and individual therapy sessions, and that he took prescribed medications. The Veteran endorsed difficulty sleeping, nightmares, intrusive thoughts, avoidance behavior, hypervigilance, exaggerated startled responses, detachment, difficulty relating to others, flashbacks, hallucinations, a dislike of loud noises, depressed mood, irritability, and anger. The Veteran did not endorse suicidal or homicidal ideation. The examiner noted the Veteran demonstrate a mild remission of his PTSD due to recent mental health treatment. The examiner also noted the Veteran's level of impairment was occupational and social impairment with reduced reliability and productivity. The examiner noted that, given the Veteran's October 2012 VA treatment note assessing him with a GAF score of 55, "there does not appear to be an increased severity of PTSD symptoms given his current rating of 70% for PTSD[.]"

In October 2013, Dr. H., a licensed psychologist, examined the Veteran's PTSD. The Veteran reported anxiety, nervousness, a restricted affect, depression, and suspiciousness. The examiner noted the Veteran struggled with homicidal ideation, near-continuous depression and anxiety, impaired personal control, and difficulty adapting to stressful circumstances. The examiner assessed the Veteran with a GAF score of 50, noting "this expert believes his PTSD and social impairment are emotionally debilitating."

At the June 2016 VA medical examination, the Veteran endorsed depressed mood, anxiety, suspiciousness, chronic sleep impairment, mild memory loss, such as forgetting names, directions or recent events. The examiner noted the Veteran was not currently receiving treatment for his disability, noting March 2016 VA treatment records which indicated the Veteran's PTSD was "stable." The examiner noted the Veteran's level of impairment was occupational and social impairment with reduced reliability and productivity. The examiner also noted the Veteran's disability would not prevent gainful employment. 

Given these facts, the Board finds that a 70 percent rating adequately reflects the Veteran's posttraumatic stress disorder. 38 C.F.R. § 4.7. See Hart v. Mansfield, 21 Vet. App. 505 (2007). The Veteran's PTSD manifested as occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); difficulty in adapting to stressful circumstances (including work or a work like setting); and an inability to establish and maintain effective relationships. 

However, the Veteran's PTSD did not demonstrate as total occupational and social impairment because the Veteran did not endorse symptoms such as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; or intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene).

Petition to reopen previously denied claim

Generally, a claim that has been denied in an un-appealed Board decision or an un-appealed RO decision may not thereafter be reopened and allowed. 38 U.S.C. §§ 7104 (b), 7105 (c). The exception to this rule is 38 U.S.C. § 5108, which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim. 38 U.S.C. § 5108 (West 2014); 38 C.F.R. § 3.156 (a); see also Hodge v. West, 155 F. 3d 1356 (Fed. Cir. 1998).

New evidence means existing evidence not previously submitted to agency decision makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156 (a).

The Court has held that the determination of whether newly submitted evidence raises a reasonable possibility of substantiating the claim should be considered a component of the question of what is new and material evidence, rather than a separate determination to be made after the Board has found that evidence is new and material. See Shade v. Shinseki, 24 Vet. App. 110 (2010). 

The threshold for determining whether new and material evidence raises a reasonable possibility of substantiating a claim is "low." See Shade v. Shinseki, 24 Vet. App. 110, 117 (2010). In determining whether this low threshold is met, VA should not limit its consideration to whether the newly submitted evidence relates specifically to the reason why the claim was last denied, but instead should ask whether the evidence could reasonably substantiate the claim were the claim to be reopened, either by triggering the VA Secretary's duty to assist or through consideration of an alternative theory of entitlement. Id. at 118.

When determining whether the claim should be reopened, the credibility of the newly submitted evidence is presumed. See Justus v. Principi, 3 Vet. App. 510 (1992). The newly presented evidence need not be probative of all the elements required to award the claim, just probative of each element (or at least one element) that was a specified basis for the last disallowance of the claim. See Evans v. Brown, 9 Vet. App. 273, 283 (1996); see also Hodge, 155 F.3d at 1363 (noting that new evidence could be sufficient to reopen a claim if it could contribute to a more complete picture of the circumstances surrounding the origin of a claimant's injury or disability, even where it would not be enough to convince the Board to grant the claim). 

The claim of service connection for a left foot disability was denied in an August 2001 rating decision. Because new and material evidence has since been submitted, this claim will be reopened. 

In a February 1991 rating decision, the RO denied the claim because there were no complaints of the diagnosed disability in service. Although notified of this decision by a February 1991 letter, the Veteran did not initiate an appeal or submit new and material evidence within one year of the rating decision. The denial is final as to the evidence then of record, and is not subject to revision on the same factual basis. See 38 U.S.C. § 7105 (b); see also 38 C.F.R. §§ 3.104, 3.156 (a), 20.302, 20.1103. 

In July 2000, the Veteran petitioned to reopen the claim. In a July 2001 decision, the RO denied reopening because the evidence submitted was not new or material. While the Veteran initiated an appeal, the August 2001 rating decision became final when the Veteran withdrew his appeal prior to final adjudication. 38 U.S.C. § 7105; 38 C.F.R. § 20.1103. 

In October 2011, the Veteran petitioned to reopen the service connection claim. In a July 2012 rating decision, the RO denied reopening because the evidence was new but not material. The Veteran filed a timely notice of disagreement (NOD), and perfected the appeal following the August 2013 statement of the case (SOC). 

Evidence submitted since the final August 2001 rating decisions consists of records from the Social Security Administration (SSA), private medical records, VA treatment records and the Veteran's statements. SSA, VA and private medical records show treatment for a left foot disability, and the Veteran's statements reiterate his contention that his current disability is related to service. 

However, the RO provided the Veteran with a VA examination in May 2013 for this disability. By affording the Veteran a new VA examination after the Veteran submitted his petition to reopen, VA conducted a de facto reopening of the claim. See Falzone v. Brown, 8 Vet. App. 398, 404 (1995); see also Shade, 24 Vet. App. at 110. Thus, the claim of entitlement to service connection for a left foot disability is reopened and will be discussed on the merits below. 38 U.S.C. § 5108; 38 C.F.R. § 3.156.


Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by service. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303 (a). "To establish a right to compensation for a present disability, a Veteran must show: '(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service' - the so-called 'nexus' requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Disorders diagnosed after discharge will still be service connected if all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d); see Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994).

Certain disorders, listed as "chronic" in 38 C.F.R. § 3.309 (a) and 38 C.F.R. § 3.303 (b), are capable of service connection based on a continuity of symptomatology without respect to an established causal nexus to service. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Arthritis is a "chronic disease" listed under 38 C.F.R. § 3.309 (a). Therefore, the presumptive service connection provisions based on "chronic" in-service symptoms and "continuous" post-service symptoms under 38 C.F.R. § 3.303 (b) apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. 38 C.F.R. § 3.303 (b). 

Additionally, where a veteran served ninety days or more of active service, and certain chronic diseases, such as arthritis, become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309 (a). While the disease need not be diagnosed within the presumptive period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id.

In deciding an appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

When considering whether lay evidence is competent, the Board must determine, on a case-by-case basis, whether a veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. 465, 469. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr, 21 Vet. App. 303. Lay evidence may establish a diagnosis of a simple medical condition, a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. Jandreau, 492 F.3d 1372, 1377.

In deciding claims, it is the Board's responsibility to evaluate the entire record on appeal. See 38 U.S.C.A. § 7104 (a). Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss each and every piece of evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

When all the evidence is assembled, the Board is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether the preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

A. Left Foot 

At the July 1974 VA medical examination, the Veteran was diagnosed with bilateral pes planus, 2nd degree, asymptomatic, and left foot callosities, asymptomatic. In May 2001, the Veteran underwent a plantar condylectomy of the left fifth metatarsal head, an exostectomy of the left hallux, and arthroplasty of the left second digit. 

The Veteran's December 1969 report of medical examination prior to induction indicates a normal clinical evaluation. In June 1970, the Veteran complained of pain in his left foot at the first metatarsophalangeal joint. The examiner noted no swelling or recent trauma. There are no other complaints, diagnoses, or treatments for a left foot disability in service. The Veteran's September 1971 report of medical examination at separation indicates a normal clinical examination. 

At the May 2013 VA medical examination, the Veteran's left foot did not demonstrate other diagnoses in addition to the conditions that required the May 2001 surgeries. The examiner opined the Veteran's current left foot disability was not caused by or related to service because the Veteran's in-service complaint "does not support" the foot pathologies that required the May 2001 surgery. 

The preponderance of the evidence is against the claim for service connection for a left foot disability. The probative medical evidence indicates the Veteran's current left foot disability is not etiologically related to the in-service complaint of joint pain in his left foot. 

The Veteran has continuously indicated throughout the appeal that his current left foot disability is a result of his in-service pain complaint. The Veteran is competent to report observable symptomatology of his condition and to relate a contemporaneous medical diagnosis. See Layno, 6 Vet. App. 465, 469; see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). However, while the Veteran has attempted to establish a nexus through his own lay assertions, the Veteran is not competent to offer opinions as to the etiology of his current left foot disability. See Jandreau, 492 F.3d 1372, 1377 n.4; Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). A foot disability requires specialized training for determinations as to diagnosis and causation, and is therefore not susceptible to lay opinions on etiology. Thus, the Veteran is not competent to render such a nexus opinion or attempt to present lay assertions to establish a nexus between his current diagnosis and its relationship to his in-service complaint.

Since the Veteran's current left foot disability is not related to service, the claim for service connection is denied. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 

B. Left Knee 

June 2015 VA treatment records indicate the Veteran's left knee demonstrated a cyst suggestive of remote trauma to the femoral attachment site. May 2011 x-rays of the Veteran's left knee showed the knee was within normal limits.

The Veteran's December 1969 report of medical examination prior to induction indicates a normal clinical evaluation. There are no complaints, diagnoses, or treatments for a left knee disability in service. The Veteran's September 1971 report of medical examination at separation indicates a normal clinical examination. 

The preponderance of the evidence is against the claim for service connection for a left knee disability. There is no probative medical evidence that indicates the Veteran's current left knee disability is related to service. Since the Veteran's left knee disability is not related to service, the claim for service connection is denied. 

As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 

C. Right Shoulder 

At the May 2013 VA medical examination, the examiner diagnosed the Veteran with degenerative joint disease (DJD), also known as arthritis, of the right shoulder. 

The Veteran's December 1969 report of medical examination prior to induction indicates a normal clinical evaluation. The Veteran testified that he recalled being seen at sick call for a shoulder complaint while in service. However, service treatment records indicate there were no complaints, diagnoses, or treatments for a right shoulder disability in service. The Veteran's September 1971 report of medical examination at separation indicates a normal clinical examination. 

At the May 2013 VA medical examination, the Veteran reported pain since service. The examiner opined the Veteran's right shoulder disability was "less likely as not" caused by or related to service because there were no complaints during or after service until he was diagnosed with arthritis 43 years later at the examination. 

The preponderance of the evidence is against the claim for service connection for a right shoulder disability. There is no probative medical evidence that indicates the Veteran's current right shoulder disability is related to his service, or that the disability demonstrated within the presumptive period after separation. Since the Veteran's right shoulder disability is not related to service, the claim for service connection is denied.

As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 
D. Left Eye

VA treatment records and private treatment records indicate the Veteran was diagnosed with invasive malignant melanoma of the conjunctiva of the left eye in June 2008 and underwent surgery in October 2008. 

The Veteran's December 1969 report of medical examination prior to induction indicates a normal clinical evaluation. Service treatment records indicate the Veteran was hospitalized for repeated complaints of a sty in September 1970. Upon discharge from the hospital in October 1970, the examiner assessed the Veteran with bacterial conjunctivitis, secondary to orbital cellulitis, a diagnosis that the Veteran has claimed service connection for previously. The Veteran now contends that his in-service eye injury caused his eye cancer. 

The preponderance of the evidence is against a claim for service connection for a left eye disability. The Veteran is not competent to express a probative opinion as to the cause of his eye cancer and there is no probative medical evidence to otherwise indicate the Veteran's current left eye disability is related to his in-service eye injury. 

The Board has considered the August 2010 opinion of the Veteran's private ocular oncologist, who noted the Veteran's report of an in-service injury, but did not review the Veteran's service treatment records or provide an opinion as to the etiology of the Veteran's overall left eye condition. 

Since the Veteran's current left eye disability is not related to service, the claim for service connection is denied. 

As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not applicable. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 



Total Disability Rating based on Individual Unemployability

A total rating based on unemployability due to service-connected disabilities may be granted if the service-connected disabilities preclude the Veteran from obtaining or maintaining substantially gainful employment consistent with his or her education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16.

If there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16 (a). For those Veterans who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16 (a), total disability ratings for compensation may nevertheless be assigned when it is found that the service-connected disabilities are sufficient to produce unemployability; such cases should be referred to the Director, Compensation Service, for extraschedular consideration. 38 C.F.R. § 4.16 (b).

Provision 38 C.F.R. § 4.16 (a) establishes that the following will be considered as one disability: (1) Disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war.

In reaching a determination of a TDIU, it is necessary that the record reflect some factor which takes the Veteran's case outside the norm with respect to a similar level of disability under the rating schedule. Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993); 38 C.F.R. §§ 4.1, 4.15 (2016). The fact that a claimant is unemployed or has difficulty obtaining employment is not enough. The question is whether or not the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose, 4 Vet. App. at 363. 

Marginal employment shall not be considered substantially gainful employment, and generally shall be deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts-found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16(a).

The central inquiry is "whether the veteran's service connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to a veteran's level of education, special training, and previous work experience, but advancing age and the impairment caused by nonservice-connected disabilities are not for consideration in determining whether such a total disability rating is warranted. See 38 C.F.R. §§ 3.341, 4.16, 4.19; Van Hoose, 4 Vet. App. at 363.

Service-connected disability compensation is in effect for PTSD at 70 percent disabling; diabetes mellitus II at 20 percent disabling; bilateral peripheral neuropathy of the upper extremities at 20 percent disabling; bilateral hearing loss at 10 percent disabling; tinnitus at 10 percent disabling; bilateral peripheral neuropathy of the lower extremities at 10 percent disabling; and noncompensable erectile dysfunction and body rash disabilities. The combined ratings for these disabilities during the appellate period are 80 percent as of October 12, 2011, and 90 percent as of June 3, 2016. The initial threshold requirements for entitlement to TDIU are thus met. The question for consideration is whether the Veteran is capable of performing the physical and mental acts required by employment.

The Veteran completed high school prior to entering the service. He completed a training course on auto diesel mechanics following discharge, and worked as service maintenance technician. He last worked in 2008, when he underwent surgery to remove his eye cancer.

In November 2013, the Veteran submitted an opinion from a private vocational consultant, who opined that the Veteran met the criteria "for total occupational disability due to his service-connected PTSD." She noted that the Veteran's inability to maintain effective relationships with others would make gainful employment difficult.

SSA records indicate the Veteran's disability determination was based on his osteoarthritis and eye cancer, which are not service-connected. 

At the May 2016 VA medical examination for hearing loss, the Veteran reported that using hearing aids helped him understand some conversations, but that they were not helpful if there were additional loud noises. He also reported that his tinnitus caused hearing difficulties.

At the June 2016 VA medical examination for diabetes mellitus type II, the examiner noted the Veteran's disability did not impact his ability to work. However, the examiner noted that the Veteran's related peripheral neuropathy disabilities would render him "unable" to work in a physically demanding job but "not in a sedentary line of work."

At the June 2016 VA medical examination for PTSD, the examiner noted the Veteran's disability was "stable" and that it would not prevent gainful employment.

The evidence is in approximate balance and the claim for TDIU will be granted. The Veteran's work history was of a physically demanding nature, which he can no longer perform given his peripheral neuropathy disabilities. In addition, while his PTSD is stable, he remains anxious, suspicious, and unable to maintain effective work or work-like relationships. 

Given the Veteran's education, work history, and the physical and mental impairments resulting from his service-connected disabilities, entitlement to TDIU is granted. 




ORDER

Entitlement to an initial evaluation in excess of 70 percent for posttraumatic stress disorder is denied.

New and material evidence having been received, the petition to reopen the claim for entitlement to service connection for a left foot disability is granted.

Service connection for a left foot disability is denied.

Service connection for a left knee disability is denied.

Service connection for a right shoulder disability is denied.

Service connection for a left eye disability is denied.

TDIU is granted.



____________________________________________
Vito A. Clementi
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs